UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Doe YZ, | Case Number:  15cv1151 (ADM/SER) |
| Plaintiff, | |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW TO PROCEED UNDER PSEUDONYMS** |
| Shattuck-St. Mary's School, | |
| Defendant. | |
| Doe XY, | Case Number:  15cv1154 (ADM/SER) |
| Plaintiff, | |
| v. | |
| Shattuck-St. Mary's School, | |
| Defendant. | |
| Doe AB, | Case Number:  15cv1155 (ADM/SER) |
| Plaintiff, | |
| v. | |
| Shattuck-St. Mary's School, | |
| Defendant. | |

---

## **INTRODUCTION**

Plaintiffs, who were sexually assaulted as minors by one of Defendant's agents, should be permitted to advance their lawsuits using pseudonyms. As victims of crimes suffered as children, Plaintiffs' privacy interests in maintaining their anonymity heavily outweigh the First Amendment interest in public proceedings. If compelled to publicly disclose their identities, Plaintiffs will face

additional trauma, exacerbating the injuries and damages that Plaintiffs have already incurred as a result of the sexual abuse. Since the Court can maintain the public's interest in following court proceedings while safeguarding Plaintiffs' privacy interests, Plaintiffs should be allowed to proceed using pseudonyms.

## FACTS

Plaintiffs filed their actions on March 4, 2015 alleging causes of action for negligence, negligent supervision and negligent retention against Defendant Shattuck St. Mary's School (hereinafter "Shattuck"). Plaintiffs as minor students at the school were sexually abused by Shattuck's employee, Lynn Seibel. (*Doe XY* Compl. ¶ 19, *Doe YZ* Compl. ¶ 19, and *Doe AB* Compl. ¶ 19). Each Plaintiff initiated his action under a 'Doe' name while simultaneously disclosing their true identities to Shattuck under separate cover. (*Doe XY* Compl. ¶ 1, *Doe YZ* Compl. ¶ 1, and *Doe AB* Compl. ¶ 1). On May 14, 2015, Plaintiff moved to proceed anonymously. On June 16, 2015, the parties filed a joint stipulation regarding Plaintiffs' use of pseudonym, in which the parties stipulated to agree to permit Plaintiffs to use a pseudonym. Accordingly by letter of June 16, 2015, Plaintiffs withdrew their motion hearing. In response, the Court entered an Order to Show Cause on June 17, 2015 regarding the use of pseudonyms to address the interests of the public's right of access to open courts. This brief is submitted in response to this Court's Order to Show Cause

Shattuck does not oppose Plaintiffs' use of pseudonyms to protect their identities in these lawsuits and agrees that the cases subject Plaintiffs to disclosure of the utmost intimacy. (See Exhibit 1 to Affidavit of Sarah G. Odegaard, Stipulation of Parties (hereinafter "Stip")). Due to the nature of the claims relating to sexual abuse perpetrated on Plaintiffs when they were minors,

Shattuck has agreed to disclose Plaintiffs identities only as necessary to investigate and defend its claims. (Id.)

## ARGUMENT

In determining whether to allow a plaintiff to proceed anonymously, the court weighs "the party's need for anonymity" against "prejudice to the opposing party and the public's interest in knowing the party's identity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). While there is "obvious and compelling" interest in public proceedings, "a small number of court-created exceptions" permit anonymity. *Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1998). "Any First Amendment right of access … [is] qualified, not absolute." *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1374 (8th Cir. 1990).

While there is no express standard to guide the court in balancing competing concerns, courts have considered the following five factors in deciding whether to allow the use of fictitious names: "1) whether the plaintiff is challenging governmental activity, 2) whether the plaintiff's action requires disclosure of information of the utmost intimacy, 3) whether identification would put the plaintiff at risk of suffering physical or mental injury, 4) whether the defendant would be prejudiced by allowing the plaintiff to proceed anonymously, and 5) the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system." *Doe No. 2* at 195; *see also James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Plaintiff B. v. Francis*, 631 F.3d 1310, 1315-1316 (11th Cir. 2011).

Therefore, in a civil suit in federal court, a plaintiff may proceed anonymously with a showing that he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings…". *Plaintiff B v. Francis,* 631 F.3d 1310, 1315-16 (11th Cir. 2011)(internal citations omitted).   Indeed "in

evaluating whether a plaintiff has shown that he has such a right, the court 'should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id.*, (internal citations omitted).

Considering the competing interests and all of the circumstances in these cases, four of the five factors weigh heavily in Plaintiffs' favor and support their request to proceed anonymously.

1. **ALLOWING PLAINTIFFS TO MAINTAIN ANONYMITY FURTHERS THE PUBLIC INTEREST IN GUARANTEEING OPEN ACCESS TO PROCEEDINGS WITHOUT DENYING LITIGANTS ACCESS TO THE COURTS.**

There is a strong public interest in ensuring that sexual abuse victims, like Plaintiffs here, are granted access to the courts where their cases may be fairly adjudicated. However, this goal cannot be achieved if litigants are chilled from ever reaching the courthouse steps for fear of repercussions that would follow if their identities were forced to be made public.

Child sexual abuse inflicts lifelong harm, often psychologically damaging victims into adulthood. (See Aff. of Robert Geffner, Ph.D. (hereinafter "Aff. of Geffner")). Many victims fear coming forward because of the shame, stigmatization, humiliation and embarrassment they experience long after the sexual acts. Id. Mandating public identification will dissuade these victims from pursuing meritorious claims because of the risk of further psychological harm. Id. The public has an interest in protecting the privacy of plaintiffs so that plaintiffs are not discouraged from asserting their claims. *See Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997). The public also has an interest in protecting plaintiffs' identities "so that other victims will feel more comfortable suing to vindicate their rights." *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001).

As stated by the Sixth Circuit Court of Appeals, "a historic social stigma attach[s] to victims of sexual violence." *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998). This tradition of

4

"blaming the victim" sets "victims apart from those of other violent crimes." *Id*. "The interest in protecting victims of sexual violence from humiliation, among other injuries, has prompted states to pass rape shield laws and to advocate against the publication of rape victims' names." *Id*. Federal law similarly supports courageous sexual abuse victims who confront their abusers. *See* FED. R. EVID. 412 (limiting character evidence of victims of sexual abuse). Indeed Minnesota has a rape shield law. *See* Minn. Stat. § 609.347 (rape shield law). Denying child abuse victims the right to pursue civil cases anonymously would lead to an impossible position for child sexual abuse victims – allowing them to pursue justice only at the cost of revealing their identities and associating their names with the horrible details of their sexual abuse as children. Faced with this proposition, many victims would have to forego filing meritorious claims. This effectively denies victims of sexual abuse access to the courts.

Weighed against the interest in allowing victims to litigate their cases, the presumption of open access is easily overcome. The public's interest is not hindered by not knowing Plaintiffs' true names. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705 (1973); *see also Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (protecting a plaintiff's identity does not impede the public's ability to follow the proceedings). Plaintiffs agree that these issues are important for the public to follow. Plaintiffs have filed a public action which allows the public the ability to access the proceedings while maintaining confidentiality of Plaintiffs' identities. As the public's access is only slightly impeded by not knowing Plaintiffs' identities, Plaintiffs should be permitted to maintain their anonymity.

2. **THESE CASE INVOLVES DISCLOSURE OF INFORMATION OF THE UTMOST INTIMACY.**

"Where the issues involved are matters of a sensitive and highly personal nature … the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a

5

very private matter." *Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (internal citation omitted). Here, the normal practice of public disclosure should yield to protect Plaintiffs' privacy regarding this very sensitive matter.

Plaintiffs were children when they were sexually abused by their teacher, Lynn Seibel. Seibel sexual grooming and abuse of Plaintiffs and other students included hideous and bizarre acts such as group masturbation, penis enlargement exercises, preying on students in the showers and naked dance parties. (*Doe XY* Compl. ¶¶ 9-11, *Doe YZ* Compl. ¶ 36, and *Doe AB* Compl. ¶ 36) Seibel's sexual abuse of each Plaintiff caused significant emotional distress, including embarrassment, loss of self-esteem, humiliation and depression. (*Doe XY* Compl. ¶ 36, *Doe YZ* Compl. ¶ 36, and *Doe AB* Compl. ¶ 36). The issues involved could not be of a more sensitive and highly personal nature. As the case develops, information about Seibel's manipulative sexual acts with Plaintiffs when they were children and other students at Shattuck will become known to the public. In addition to explicit descriptions about Seibel's sexual abuse of the minor students, highly personal details about the trauma Plaintiffs have endured and resulting damages will be revealed, including particulars about sexual confusion and mental illness.

Courts across the country have held similar circumstances to be sensitive and highly personal enough to warrant anonymity in civil cases. *See Doe v. City of Minneapolis*, 898 F.2d 612, 613 n. 1 (8th Cir. 1990) (adult plaintiff challenging ordinance prohibiting adult bookstores); *Doe v. Dept. of Transp., Fed. Aviation Admin.*, 412 F.2d 674, 675 (8th Cir. 1969) (plaintiff challenging administrative decision denying plaintiff certificate based on homosexuality); *Plaintiff B. v. Francis*, 631 F.3d 1310 (11th Cir. 2011) (district court abused discretion in not allowing plaintiffs who were sexually exploited as minors to maintain anonymity); *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) (adult plaintiff who was sexually abused as a minor permitted to

6

proceed anonymously); *Doe v. Hartford Life and Acc. Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) (plaintiff could be anonymous where she had not disclosed her mental illness to coworkers); *United States v. Doe*, 655 F.2d 920, 922 (9th Cir. 1981) (defendant's name concealed to prevent harassment and injury). The United States Supreme Court has also implicitly endorsed the use of pseudonyms to protect a plaintiff's privacy. *See e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705 (1973) (abortion); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739 (1973 (abortion); *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752 (1961) (birth control).

Exceptional circumstances that warrant the use of fictitious names include protecting the privacy of children, rape victims and other particularly vulnerable parties or witnesses. *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869. 872 (7th Cir. 1997); *see also Doe v. City of Chicago*, 360 F.3d 667, 669-70 (7th Cir. 2004) (use of fictitious name is appropriate where plaintiff is a minor, rape or torture victim or was subject to sexual assault).

Here, the sensitive nature of child sexual abuse permits anonymity. The 11th Circuit articulated the particularized gravity and traumatic nature of the sexual exploitation of children, just as the childhood sexual abuse at issue here: "The issues involved in this case could not be of a more sensitive and highly personal nature—they involve descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities." *Plaintiff B v. Francis*, 631 F.3d 1310, 1317 (11th Cir. 2011). Just as in *Plaintiff B*, plaintiffs here were minors at the time of the sexual abuse at issue in these cases, coerced into the conduct by one of Defendant's agents. Additionally, Plaintiffs here were subject to physical invasion of their bodies, as in *Plaintiff B*.

This case is unlike *Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 where the court found that the plaintiff could not proceed in the sexual harassment lawsuit using a pseudonym. In

7

*Luckett*, the plaintiff was an adult at the time of the alleged conduct, not a minor as the plaintiffs in this matter. *Id.* Also, in *Luckett* the conduct was discrimination, innuendo or coercion unlike the criminal sexual conduct at issue here. *Id.* These distinctions are important as the law protects the anonymity of sexual assault victims precisely because of the unique invasion of privacy sexual abuse entails. *See* Minn. Stat. § 609.347 (rape shield law). "Sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy…[t]hey have a right to expect that this violation will not be compounded by a further invasion of their privacy." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (internal citation omitted).

Although courts have denied the use of pseudonyms for victims of sexual assault, even when the plaintiffs allege they would suffer personal embarrassment by forced disclosure of their identities, in those cases, the plaintiffs were adults at the time they were sexually assaulted. *Doe v. Frank,* 951 F.2d 320, 324 (11th Cir.1992); *Doe v. Del Rio,* 241 F.R.D. 154, 159–62 (S.D.N.Y.2006) (holding that plaintiffs alleging sexual abuse by police officer could not proceed anonymously); *Doe v. Shakur,* 164 F.R.D. 359, 360–62 (S.D.N.Y.1996) (denying motion by plaintiff suing hip-hop artist for brutal sexual assault requesting to remain anonymous).

Here, the Plaintiffs were minors, children in a private boarding school, at the time of the sexual abuse. In addition, Plaintiffs will suffer much more than embarrassment, as argued *infra*, section 3. Recognizing the sensitive and highly personal nature of child sexual abuse here, the weight of factor alone should be sufficient to permit Plaintiffs to proceed anonymously.

**3. IDENTIFYING PLAINTIFFS PUBLICLY PUTS THEM AT RISK OF SUFFERING PHYSICAL AND MENTAL INJURY.**

To date, Plaintiffs have been able to avoid publicly disclosing their identities. Their identities were not publicly disclosed through the related criminal investigation and Plaintiffs have shared that they were abused with only a few people. Privacy and anonymity is a great concern to

Plaintiffs. For survivors of childhood sexual abuse, if their identities are made public, the likelihood of suffering aggravated shame and stigmatization greatly increases, which can cause ongoing PTSD, depression, psychological distress and social problems. (See Aff. of Geffner)

Courts have long recognized that where litigants may suffer extreme distress or danger from their participation in a lawsuit, proceeding anonymously is warranted. *Lozano v. City of Hazelton*, 496 F.Supp.2d 477, 505 (M.D. Pa. 2007) *aff'd in part, vacated in part*, 620 F.3d 170 (3d Cir. 2010) (reversed on other grounds) (citing *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1063 (9th Cir. 2000); *Doe v. City of Chicago*, 360 F.2d 667, 669. In *Doe No. 2 v. Kolko*, 242 F.R.D. 193, the court held that fear of retaliation and ostracism from members of the plaintiff's community was sufficient evidence that disclosure would be a serious risk of harm to plaintiff's mental health. *Id*. at 196. Similarly, in *Doe 130 v. Archdiocese of Portland in Oregon*, the court held that "the experience of sexual abuse can be deeply traumatic and public knowledge of such abuse can trigger new trauma even years after the fact." 2008 WL 656021 at *4 (D. Or. Mar. 6, 2008) (attached as Exhibit 2 to Affidavit of Sarah G. Odegaard). In allowing the plaintiff to proceed using a pseudonym, the court found that the child sexual abuse victim "faces a real risk of harm to which he, as a survivor of clergy sexual abuse, is peculiarly vulnerable and his fears regarding that risk are entirely reasonable." *Id*.

The same is true here. Public disclosure of Plaintiffs identities, where Plaintiffs have not shared their experience with even their closest relatives, would subject them to a great risk of further trauma and emotional distress. (See Aff. of Geffner). Public disclosure of their names may not only impede their recovery and harm their mental health, it will also inflict serious pain on their families who many experience additional emotions of guilt, sadness and shame. Plaintiffs should not be forced to publicly disclosure their identities as the price for justice.

## 4. DEFENDANT IS NOT PREJUDICED BY ALLOWING PLAINTIFF TO PROCEED ANONYMOUSLY.

Shattuck is aware of Plaintiffs' names and identifying information about Plaintiffs which will enable it to conduct discovery and defend its case. In fact, Shattuck agrees that no prejudice is suffered by permitting Plaintiffs to use pseudonyms and has stipulated to allowing Plaintiffs to use Doe designations. (See Exhibit 1, Stipulation of Parties). Thus the consideration of fairness to the defendant cited by some courts to weigh in favor of disallowing pseudonyms is not present here. Shattuck has stipulated to agree to Plaintiffs' use of pseudonyms. This is unlike *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996), where the court found that it would be "serious disadvantage" for a plaintiff to bring accusations against a defendant behind a cloak of anonymity while the defendant defended itself in public in a civil suit. Here in contrast, Defendant Shattuck does not oppose Plaintiffs remaining under a cloak of anonymity for public purposes, while disclosing their identities to Defendant Shattuck for the purposes of investigating and defending the suit.

## 5. PLAINTIFF IS NOT CHALLENGING GOVERNMENT ACTIVITY.

Where a plaintiff challenges the validity of government activity, anonymity is often granted because the plaintiff may have to admit they violated state laws or government regulations or wished to engage in prohibited conduct. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). This factor is neutral, as Plaintiffs here are not challenging government activity.

## CONCLUSION

Given the sensitive and highly personal nature of the issues in these cases and the risk of subjecting Plaintiffs to additional trauma if forced to disclose their identities publicly in a case of utmost intimacy, Plaintiffs should be permitted to proceed with their cases using pseudonyms.

Weighing the interest of access to courts for plaintiffs, victims of a crime of sexual assault of a minor, against the First Amendment interest in 'truly public' proceedings, a compromise is reached by allowing these cases to remain public actions without disclosing Plaintiffs' identities.

Dated: July 6, 2015.                             JEFF ANDERSON & ASSOCIATES, P.A.

                                                         s/Sarah G. Odegaard
                                                         By: Jeffrey R. Anderson, #2057
                                                         Sarah G. Odegaard, #0390760
                                                         Trusha Patel Goffe, #0391708
                                                         *Attorneys for Plaintiffs*
                                                         366 Jackson Street, Suite 100
                                                         St. Paul, MN 55101
                                                         (651) 227-9990
                                                         Fax:  (651) 297-6543