UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Doe XY,

        Plaintiff,

v.

Shattuck-St. Mary's School,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-1154 ADM/SER

___

Jeffrey R. Anderson, Esq., and Trusha Patel Goffe, Esq., Jeff Anderson & Associates, P.A., Saint Paul, MN, on behalf of Plaintiff.

Stephen O. Plunkett, Esq., Bassford Remele, P.A., Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On March 8, 2016, the undersigned United States District Judge heard oral argument on Defendant Shattuck-St. Mary's School's ("Shattuck") Motion for Summary Judgment [Docket No. 50]. Plaintiff Doe XY[1] asserts claims for negligence, negligent supervision, and negligent retention. Shattuck argues that it is entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. For the reasons set forth below, Shattuck's motion is denied.

## II. BACKGROUND[2]

Shattuck is a private boarding and day school located in Faribault, Minnesota. Most

___

[1] Plaintiff is proceeding under a pseudonym because this case arises out of alleged sexual abuse that occurred when he was a minor. See Order Regarding Pl.'s Use Pseudonyms [Docket No. 33].

[2] A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Shattuck students live on campus in residence halls overseen by "dorm parents." Goffe Aff. [Docket No. 57] Ex. 3. Dorm parents are Shattuck teachers or coaches who live in the residence halls and "serve as on-site parents for our students." Id.

Plaintiff is a male Colorado resident who first enrolled at Shattuck as an eighth grader, in 1998. Id. Ex. 4 ("Pl. Dep. I") at 34:10–12. Beginning in his sophomore year, 2000–2001, he lived in Whipple Hall ("Whipple"), a boys' dorm, where one of his dorm parents was Lynn Seibel. Aggergaard Decl. [Docket No. 53] Ex. 2 ("Pl. Dep. II") at 74:10–12; Goffe Aff. Ex. 1 at 57.

## A. Lynn Seibel

Seibel started working at Shattuck in 1992 as a drama teacher. Goffe Aff. Ex. 2 ("Seibel Dep.") at 96:13–97:7. Initially he lived off campus, but later he became a dorm parent and moved with his family into an apartment in Whipple. Id. at 11:14–24. As a dorm parent, Seibel served as both a supervisor and mentor to the students in Whipple. Id. at 21:15–22, 55:12–23. He was popular with the students and had a reputation "as somebody to go to and talk to" about their problems. Id. at 21:15–22.

A few years after he became a dorm parent, Seibel started acting inappropriately around the students living in Whipple. He told them stories about his sexual history. Pl. Dep. I at 214:24–215:25; Aggergaard Decl. Ex. 4 ("Crim. Compl.") at 7. He encouraged them to engage in activities involving nudity, such as "streaking" the girls' dorms and having "naked dance parties" in Whipple's basement shower area. Seibel Dep. at 57:7–11; Crim. Compl. at 9, 11–13. He also frequently came into the bathroom "to chat" while students were showering. Pl. Dep. I at 198:15–200:24; Crim. Compl. at 8–9, 12. Although Seibel remained clothed and did not touch

the students during these activities, he watched the students and commented on their physiques and the size of their penises. Pl. Dep. I at 190:5–8, 194:15–18, 195:18–20; Crim. Compl. at 9, 11–12.

Seibel told the students that they could make their penises larger with exercises he had developed. Seibel Dep. at 18:5–10. During what students referred to as "AP drama class," students masturbated while Seibel walked around the room, fully clothed, explaining how to perform his exercises. Id. at 103:9–105:21; Crim. Compl. at 7–12. He also measured the students' penises with a ruler during these sessions and talked about whose penis was the largest. Seibel Dep. at 105:10–19; Crim. Compl. at 7–12.

Although Seibel engaged in these activities for his own sexual gratification, he concealed his motive from the students. Seibel Dep. at 25:10–20. He believed the students would stop participating in the activities if they realized they were being abused, so he was careful not to show any sexual interest in the students. Id. Instead, he portrayed himself as a "guru" the students could trust and learn from. Id. at 17:17–25. He "groomed" the students to "talk[ ] about their penises, about their sexuality . . . so they would feel comfortable being naked in front of [him] and maybe even masturbating." Id. at 100:10–25. And he approached the AP drama sessions "very clinically" to make the exercises and measurements seem legitimate. Id. at 27:22–28:18. These strategies worked, in Seibel's view, because the students "could say to themselves, 'Well, he's not really doing this for his sexual gratification, he's doing it for our own benefit.'" Id. at 73:14–21.

B. **Plaintiff's Interactions with Seibel**

During Plaintiff's sophomore year, 2000–2001, when he lived in Whipple with Seibel as

his dorm parent, Plaintiff was exposed to Seibel's inappropriate sexual conduct. He attended naked dance parties at which students stretched their penises and slapped each other on the buttocks while Seibel watched and commented. Pl. Dep. I at 184:5–198:14. Seibel also talked to him while he showered, and on at least one of those occasions Seibel commented on how good Plaintiff's pubic region looked after he shaved it. Id. at 198:15–202:16.

Although Plaintiff did not participate in any AP drama sessions, he was aware of Seibel's penis enlargement exercises. Id. at 173:5–14, 211:25–212:20. One night when Plaintiff was stretching his penis under his bed covers, Seibel arrived for a lights-out check. Id. at 208:10–22. The door to Plaintiff's room was latched open. Id. Plaintiff had questions about the penis enlargement exercises, so he asked Seibel whether he was performing them correctly. Id. at 208:22–209:2. According to Plaintiff,

> [Seibel] came in to address my questions; unlatched the door to close it, and asked me to show how I was doing it. So I showed him. And essentially showed him how I was stretching and pulling my penis, and then trying to push blood flow, and how it was supposed to work with force.
>
> He instructed me to apply the pressure at below the head of my penis, and with the force again. And something caused him to have to leave. And we were going to—he said we would—he'd talk to me about it later, and never heard anything back.
>
> So I'm not sure if he forgot, or wasn't interested, or what happened there . . . .

Id. at 209:3–17. This interaction lasted approximately one minute.[3] Id. at 210:18–25.

Plaintiff did not view Seibel's conduct as abusive at the time it occurred because he

---

[3] This interaction between Plaintiff and Seibel will hereafter be referred to as the "lights-out incident."

desperately wanted to be part of Seibel's "in-crowd." Id. at 170:16–171:22. He wanted Seibel's "approval" and felt bad when Seibel did not comment on his body during the naked dance parties. Id. at 196:2–16. He even felt "a little bit of jealousy" toward students who participated in the AP drama sessions. Id. at 173:25–174:13. Plaintiff did not report Seibel to the police when he was interviewed as part of another investigation of alleged sexual misconduct at Shattuck. Id. at 170:16–171:22.

### C. Seibel's Resignation and Subsequent Prosecution

In August 2003, Seibel resigned from Shattuck after the school found pornography, including child pornography, on his work computer. Crim. Compl. at 18. Seibel then moved away from Minnesota. Id.

In June 2012, the Faribault Police Department received a report of criminal sexual conduct that occurred at Shattuck in 2001. Id. at 7. The report came from a corrections officer who was completing a pre-sentence investigation regarding a former Shattuck student. Id. Faribault Police interviewed that former student and several others, all of whom recalled Seibel's inappropriate sexual conduct. Id. at 7–13, 15–18.

Seibel was interviewed and arrested in Los Angeles on August 13, 2012. Id. at 13–15. He admitted to almost everything the former students had alleged. Id. He was charged with multiple counts of criminal sexual conduct in Minnesota on October 8, 2012 and pleaded guilty on July 12, 2013. Id. at 1–6, 19–20; Aggergaard Decl. Ex. 5 ("Guilty Plea").

### D. Plaintiff's Lawsuit

Plaintiff contacted Faribault Police on October 10, 2012 after seeing a news report on the Seibel investigation. 2d Aggergard Decl. [Docket No. 59] Ex. 2 at 1. The police took a

statement from Plaintiff, but the criminal complaint against Seibel was never amended to include Plaintiff's allegations. Id.; see Guilty Plea at 1.

Plaintiff filed this lawsuit against Shattuck on March 4, 2015.[4] Plaintiff asserts claims for negligence, negligent supervision, and negligent retention based on the school's employment of Seibel as a dorm parent and teacher.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. Matsushita, 475 U.S. at 587. However, the nonmoving party "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1113 (8th Cir. 2009) (citing Anderson, 477 U.S. at 247–49).

---

[4] Plaintiff first asserted these claims against Shattuck in a lawsuit filed on June 7, 2013 in Minnesota state court. That lawsuit, however, was improperly removed to federal court and ultimately remanded and dismissed. See Doe XY v. Shattuck-St. Mary's School, No. 13-1749, 2015 WL 269034 (D. Minn. Jan. 21, 2015).

**B. Statute of Limitations**

Shattuck argues that Plaintiff's claims are barred by the statute of limitations. "Federal courts sitting in diversity apply the forum state's statute of limitations." Zutz v. Case Corp., 422 F.3d 764, 774 (8th Cir. 2005). Under Minnesota law, negligence claims are generally subject to a six-year statute of limitations. D.M.S. v. Barber, 645 N.W.2d 383, 386 (Minn. 2002) (citing Minn. Stat. § 541.05, subd. 1(5)). And, prior to 2013, personal injury claims based on sexual abuse of a minor were subject to a six-year statute of limitations that ran from the time the plaintiff turned 18 years old. Doe v. Order of St. Benedict, 836 F. Supp. 2d 872, 876 (D. Minn. 2011) (citing D.M.S., 645 N.W.2d at 389). Under those statutes, the time for Plaintiff to bring his claims against Shattuck expired no later than 2009, when he turned 24 years old.

In 2013, however, the Minnesota Legislature passed the Child Victims Act ("CVA"). 2013 Minn. Laws ch. 89, § 1 (codified at Minn. Stat. § 541.073). The CVA amended the statute of limitations applicable to actions for damages due to sexual abuse. Id. For claims that were time-barred prior to its enactment, the CVA opened a three-year window during which such claims may be commenced. Id. subd. 5(b). The CVA states, in relevant part:

> Notwithstanding any other provision of law, in the case of alleged sexual abuse of an individual under the age of 18, if the action would otherwise be time-barred under a previous version of Minnesota Statutes, section 541.073, or other time limit, an action for damages against a person, as defined in Minnesota Statutes, section 541.073, subdivision 1, clause (2), may be commenced no later than three years following May 25, 2013. This paragraph does not apply to a claim for vicarious liability or respondeat superior, but does apply to other claims, including negligence.

Id.

The question raised by the pending motion is whether Seibel's conduct toward Plaintiff

fits the CVA's definition of "sexual abuse" such that Plaintiff can bring his otherwise untimely claim through the CVA's three-year window. The CVA defines "sexual abuse" as conduct described in Minn. Stat. §§ 609.342 to 609.3451; that is, criminal sexual conduct in the first through fifth degree. Id. subd. 1(1). Plaintiff argues that the lights-out incident where he showed Seibel how he was performing the penis enlargement exercises constituted criminal sexual conduct in either the second or fourth degree, depending on whether Plaintiff was 15 or 16 years old at the time.[5] Because the disputed elements of the offense are the same at either age, the Court will assume without deciding that Plaintiff was 16 years old when the incident occurred.

An act is criminal sexual conduct in the fourth degree when a person engages in sexual contact and any of the following circumstances, among others, exist:

> (e) the complainant is at least 16 but less than 18 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense; [or]
>
> (f) the actor has a significant relationship to the complainant and the complainant was at least 16 but under 18 years of age at the time of the sexual contact. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense.

---

[5] Plaintiff does not recall precisely when the lights-out incident occurred but knows it was sometime during his sophomore year, when he turned 16. Plaintiff alleges that the incident constituted criminal sexual conduct under the following provisions: If he was 16 years old at the time, it was criminal sexual conduct in the fourth degree pursuant to Minn. Stat. § 609.345, subd. 1(e) and 1(f). If he was 15 years old at the time, it was criminal sexual conduct in the second degree pursuant to Minn. Stat. § 609.343, subd. 1(b) and 1(g), and in the fourth degree pursuant to § 609.345, subd. 1(b).

Minn. Stat. § 609.345, subd. 1. Seibel is more than 48 months older than Plaintiff. It is also undisputed that Seibel, as a teacher and dorm parent, held a position of authority over Plaintiff.[6] Thus, if Seibel engaged in sexual contact, all the elements of § 609.345, subd. 1(e) would be satisfied.[7]

Sexual contact occurs where there is "sexual or aggressive intent" and, as relevant here,

> touching by the complainant of the actor's, the complainant's, or another's intimate parts effected by a person in a position of authority, or by coercion, or by inducement if the complainant is under 13 years of age or mentally impaired.

Minn. Stat. § 609.341, subd. 11(a)(ii).[8] The parties agree that the lights-out incident involved "touching by the complainant of . . . the complainant's . . . intimate parts." However, they disagree as to whether (1) the 13-year age limit makes this provision inapplicable to Plaintiff, (2) Seibel acted with sexual intent, and (3) Plaintiff's self-touching was effected by Seibel.

**1. Age Limit**

Shattuck argues that the definition of sexual contact codified in § 609.341, subd. 11(a)(ii) should be read to require the complainant to have been "under 13 years of age or mentally

---

[6] "Position of authority" is defined under the statute as "any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities to a child, or a person who is charged with any duty or responsibility for the health, welfare, or supervision of a child, either independently or through another, no matter how brief, at the time of the act." Minn. Stat. § 609.341, subd. 10.

[7] Plaintiff also argues that all the elements of § 609.345, subd. 1(f) are satisfied because Seibel had a "significant relationship" to him. The Court need not address this alternative argument, however, because Shattuck has failed to show that it is entitled to summary judgment under the "position of authority" theory.

[8] If Seibel was in a significant relationship to Plaintiff, any "touching by the complainant of the actor's, the complainant's, or another's intimate parts" that was committed with "sexual or aggressive intent" would fit the definition of sexual contact, regardless of what it was "effected by." See Minn. Stat. § 609.341, subd. 11(b)(ii).

impaired" at the time of the touching regardless of whether it was effected by a person in a position of authority, by coercion, or by inducement. Plaintiff responds that this age limit applies only to touching effected by inducement.

Statutory interpretation is a question of law for the Court to decide. Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 537 (8th Cir. 2006); Auto Owners Ins. Co. v. Perry, 749 N.W.2d 324, 326 (Minn. 2008). "The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent." State v. Struzyk, 869 N.W.2d 280, 284 (Minn. 2015). When statutory language is plain and unambiguous, Minnesota courts "presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction." Shire v. Rosemount, Inc., 875 N.W.2d 289, 292 (Minn. 2016). "But when a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning." Struzyk, 869 N.W.2d at 285.

Both Shattuck's and Plaintiff's proposed interpretations of the scope of the age limit are reasonable. Therefore, the statute is ambiguous in this regard, and the Court may turn to canons of construction for guidance. See id. The last antecedent rule provides that "a limiting phrase . . . ordinarily modifies only the noun or phrase that it immediately follows." Larson v. State, 790 N.W.2d 700, 705 (Minn. 2010); Barnhart v. Thomas, 540 U.S. 20, 26 (2003). Applying that rule here, the limiting phrase "if the complainant is under 13 years of age or mentally impaired" would apply only to the phrase "by inducement."

Shattuck attempts to avoid that reading of the statute by arguing that age 13 would be a sensible cutoff for criminal liability based on self-touching. Shattuck reasons that "age 13 is a time of puberty, and self-exploration naturally occurs." Def.'s Reply Mem. Supp. Mot. Summ.

J. [Docket No. 58] at 13.  This argument is unpersuasive.  First, an age cutoff is not necessary to distinguish wrongful conduct from normal self-exploration because the definition of sexual contact also requires "sexual or aggressive intent."  See Minn. Stat. § 609.341, subd. 11; State v. Austin, 788 N.W.2d 788, 792 (Minn. Ct. App. 2010) ("Sexual intent must be established to avoid criminalizing contact that is accidental or that serves an innocuous, non-sexual purpose."). Second, Shattuck's proposed interpretation would exclude much more than normal self-exploration from the definition of sexual contact.  The age limit would apply to touching effected by coercion as well as by a person in a position of authority, and to touching another person as well as touching oneself.  It seems highly unlikely that the Minnesota Legislature would have intended to exclude from the definition of sexual contact the coerced touching of another's intimate parts by a 14-year-old, for example.  It seems less likely still that the Legislature would have intended such given that the age of puberty varies widely.

The Court concludes that the age limit referenced in § 609.341, subd. 11(a)(ii) applies only to touching effected by inducement.  Accordingly, the remaining portions of that subdivision apply to Plaintiff's case despite his age at the time of the lights-out incident.

**2. Sexual Intent**

Next, Shattuck argues that Seibel did not act with sexual intent toward Plaintiff.  Sexual intent is not defined in the statute, but the Minnesota Court of Appeals construed the term in the Austin case.  788 N.W.2d at 792.  There, the court stated that "an act is committed with sexual intent when the actor perceives himself to be acting based on sexual desire or in pursuit of sexual gratification."  Id.  The court also concluded that sexual contact requires specific intent, meaning the actor must have either intended the specific result of touching intimate body parts or acted

11

with more than recklessness or negligence. Id. at 792–93.

Viewed in a light most favorable to Plaintiff, the evidence in this case supports an inference that Seibel acted with the requisite intent. The lights-out incident centered on Seibel's penis enlargement exercises. Seibel admits that he used these exercises to manipulate Shattuck students to touch their penises in his presence and for his sexual gratification. Seibel Dep. at 17:20–18:19, 27:19–28:18. On the specific night in question, Plaintiff asked Seibel whether he was performing the exercises correctly, and Seibel responded by asking Plaintiff to show how he was doing them. Pl. Dep. I at 208:14–209:5. Plaintiff then touched his penis while Seibel watched and instructed Plaintiff where to put more pressure. Id. at 209:5–12. The conduct here parallels Seibel's behavior during the AP drama sessions, which he admits were a "turn-on" for him. See Seibel Dep. 18:1–19, 103:9–19. Based on this evidence, a reasonable jury could conclude that Seibel was "acting based on sexual desire or in pursuit of sexual gratification" and intended the specific result of Plaintiff touching his own penis while Seibel observed him. See Austin, 78 N.W.2d at 792 ("sexual intent typically must be inferred from the nature of the conduct itself"); State v. Dengler, No. A13-1042, 2014 WL 2683938, at *5–7 (Minn. Ct. App. June 16, 2014) (affirming a criminal sexual conduct conviction where the evidence of sexual intent consisted of the victim's testimony that the defendant had previously made inappropriate comments about her breasts and buttocks and had shown her a sexually explicit video).

None of Shattuck's arguments to the contrary are persuasive. First, Shattuck argues that this evidence of Seibel's sexual intent is insufficient because "Plaintiff admitted to masturbating before attending Shattuck" and "was already touching himself when Seibel entered the room." Def.'s Mem. Supp. Mot. Summ. J. [Docket No. 52] at 12. Shattuck's focus on Plaintiff's intent

and prior behavior is misplaced.  The question is whether <u>Seibel</u> acted with the requisite intent.  That Plaintiff was touching his penis before Seibel entered the room does not mean that Seibel lacked sexual intent or did not specifically intend Plaintiff to continue touching his penis.  Similarly, neither Plaintiff's perception that Seibel was not interested in him sexually nor the short duration of the incident is conclusive evidence that Seibel lacked the requisite intent.  Seibel admits that avoiding appearing sexually interested in the students was one of his "masterpieces of manipulation" that facilitated the abuse.  Seibel Dep. at 28:11–16.

Second, even assuming for the sake of argument that grooming students to touch themselves for Seibel's sexual gratification was "mere preparation" to engage in criminal sexual conduct, Seibel went further during the lights-out incident.  After closing the dorm room door, Seibel asked Plaintiff to show how he was performing the penis enlargement exercises and told Plaintiff specifically where on his penis to put more pressure.  Those statements support an inference that Seibel intended the specific result of Plaintiff touching his penis in front of Seibel.

Third, Shattuck greatly exaggerates the risk that finding Seibel acted with sexual intent in this case "would endorse a troubling array of claims," including cases against school districts for addressing masturbation in their sexual education classes.  Def.'s Mem. Supp. Mot. Summ. J. at 15–16.  Seibel's misconduct extended far beyond what would be acceptable in a sexual education class.  Legitimate educational activities, in contrast, would not meet the sexual intent requirement, the purpose of which is "to avoid criminalizing contact that is accidental or that serves an innocuous, non-sexual purpose."  <u>Austin</u>, 788 N.W.2d at 792.

### 3.  Effected by a Person in a Position of Authority

Finally, Shattuck argues that Plaintiff's self-touching during the lights-out incident was

not "effected by" Seibel. "Effected by" is not defined by statute, so the term is construed according to its common and approved usage. See Minn. Stat. § 645.08(1). The dictionary definition of "effect" is "to bring about; to make happen." Black's Law Dictionary (10th ed. 2014); Webster's New Collegiate Dictionary (1977). In this case, a reasonable jury could conclude that Plaintiff's self-touching was effected by Seibel because Seibel asked him to show how he was performing the exercises and instructed him where to put more pressure. Cf. State v. Estrada, No. A06-1670, 2008 WL 134983, at *3 (Minn. Ct. App. Jan. 15, 2008) (affirming a criminal sexual conduct conviction based in part on incident where the defendant "told her to touch his private parts, and she touched it over his clothes").

Shattuck makes essentially the same arguments here as it did on the sexual intent issue, again to no avail. Plaintiff's prior self-touching, both before and on the night in question, does not preclude a finding that Seibel's statements effected the self-touching that occurred in his presence. At best, and assuming without deciding that it would be admissible at trial,[9] this evidence shows there is a factual dispute as to whether Seibel effected the self-touching during the lights-out incident. Additionally, it is inconsequential whether grooming alone could satisfy the effected-by requirement because here Seibel also asked to see Plaintiff touch himself and gave him instructions on how to do so.

To summarize, the age limit referenced in § 609.341, subd. 11(a)(ii) does not apply here, and a reasonable jury could find that Seibel acted with sexual intent and effected the self-

---

[9] In a civil case involving alleged sexual misconduct, a court may admit evidence of a victim's sexual behavior or predisposition only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2).

14

touching during the lights-out incident. If a jury so found, the elements of sexual contact and, in turn, criminal sexual conduct in the fourth degree pursuant to Minn. Stat. § 609.345, subd. 1(e) would be satisfied. Because criminal sexual conduct meets the definition of sexual abuse under the CVA, Plaintiff's claims would be timely under the CVA's special three-year window. In other words, Shattuck has failed to carry its burden of showing that there are no genuine disputes of material fact and the statute of limitations bars Plaintiff's claims as a matter of law.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Shattuck-St. Mary's School's Motion for Summary Judgment [Docket No. 50] is **DENIED**.

BY THE COURT:

  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 1, 2016